UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **NUTRITION DISTRIBUTION, LLC,** an Arizona Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> **SUPPZ, INC.,** a Wisconsin corporation, and <br><br> DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 17-cv-351 <br><br> **COMPLAINT** <br> **FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT § 43 (a)(1)(B))** <br><br> [DEMAND FOR A JURY TRIAL] |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES PURSUANT TO THE LANHAM ACT § 43 (a)(1)(B))**

Comes now Plaintiff Nutrition Distribution, LLC, an Arizona limited liability company ("Nutrition Distribution" or "Plaintiff"), pursuant to the Lanham Act § 43 (a)(1)(B), and asks this Honorable Court to provide redress for violations of rights they suffered at the hands of the Defendant Suppz, Inc., a Wisconsin corporation ("Defendant" or "Suppz").

# INTRODUCTION

1. This is a civil action arising out of Suppz' false and misleading advertising regarding the dietary supplement "1-ANDRO MAX" sold on Suppz' website, https://suppz.com (the "Website"). A primary ingredient of 1-ANDRO MAX is the prohormone 1-Dehydroepiandrosterone (also known as "1-DHEA," "1-Androsterone" and "1-Andro," and referred to herein as "1-DHEA"). It is well established that 1-DHEA metabolizes upon human ingestion into, among other chemicals, the prohormone 1-Androstenediol, which in turn further metabolizes into, among other chemicals, the anabolic-androgenic steroid 1-Testosterone (1-Testosterone and 1-Androstenediol shall sometimes be referred to herein, individually and collectively, as the "Resultant Chemicals").

2. 1-Testosterone has been touted in the bodybuilding and fitness community to increase muscle mass and strength in users. However, these gains come at a steep price. Published, peer-reviewed clinical studies have repeatedly demonstrated that the side effects from oral consumption of 1-Testosterone can include, without limitation, hepatotoxicity (i.e., liver damage), cholestasis (i.e., bile blockage), acute renal failure, hypogonadism (i.e., decreased function or failure of sexual organs), gynecomastia (i.e., development of breasts in men), and infertility.

3. It is these severe health risks that led the Federal government in 2005 to classify 1-Testosterone as a Schedule III "controlled substance" under the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) (the "CSA"), thereby criminalizing the manufacture, distribution and dispensation of 1-Testosterone.

4. In an attempt to skirt this classification, unscrupulous manufactures and distributors developed and marketed 1-Androstenediol as a delivery mechanism for 1-Testosterone. Oral consumption of 1-Androstenediol, through liver metabolism, results in a varying amount of 1-Testosterone in a user's body. When 1-Androstenediol was

itself placed on Schedule III of the CSA in 2014, manufactures and distributors then brought 1-DHEA to the market, a prohormone that metabolizes to 1-Androstenediol.

5. To the extent that 1-DHEA and 1-Androstenediol metabolize in the human body into 1-Testosterone, they pose all of the same extreme health risks attributable to this illegal anabolic-androgenic steroid.  In addition, the metabolic processes required to break 1-DHEA into 1-Androstenediol and, in turn, 1-Androstenediol into 1-Testosterone have been shown to require significant liver resources, thereby significantly increasing the risk of permanent liver damage.  This risk is exacerbated by the fact that users often have to take large amounts of 1-DHEA to achieve the desired amount of 1-Testosterone since a large proportion of the 1-DHEA consumed converts to other metabolites or is passed through the body.  Accordingly, 1-DHEA is substantially more dangerous than even the dangerous and illegal 1-Testosterone.

6. Despite these severe health dangers, Defendant markets 1-ANDRO MAX to body builders, gym users, fitness enthusiasts and athletes as containing clinically tested and safe performance enhancers, promising these consumers numerous purported physical benefits without mentioning the overwhelming clinical evidence that 1-DHEA, 1-Androstenediol and 1-Testosterone pose extreme health risks.

7. In addition, virtually all reputable national and international sports agencies have expressly banned 1-DHEA, 1-Androstenediol and 1-Testosterone from competition.

8. Although Defendant knows or should know that 1-DHEA and the Resultant Chemicals are extremely dangerous and banned by virtually all reputable sports agencies, and that the sale of each of the Resultant Chemicals is illegal, Defendant's marketing and advertising with respect to 1-ANDRO MAX suggests the exact opposite.  This deception is especially egregious because Defendant's marketing targets consumers who are likely seeking to increase their athletic performance without having dangerous and illegal steroids present in their bodies or being disqualified from competitions governed by sports agencies that ban steroid use.

9. Accordingly, Defendant has knowingly and materially participated in a false and misleading advertising campaign to promote and sell 1-ANDRO MAX. Defendant's continuing false, misleading, illegal and deceptive practices have violated the Lanham Act and have unjustly enriched Defendant at the expense of Plaintiff, and have caused Plaintiff extensive and irreparable harm, including but not limited to, loss of revenue, disparagement and loss of goodwill.

10. Among other things, this action seeks to enjoin Defendant from the marketing and sale of any and all products containing 1-DHEA or either Resultant Chemical, including without limitation 1-ANDRO MAX, as Defendant is illegally and falsely marketing such products in violation of the Lanham Act.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

12. This Court has personal jurisdiction over Defendant because Defendant has, directly or through its intermediaries (including distributors, retailers, and others), shipped, distributed, offered for sale, sold and advertised its nutritional supplement products, including but not limited to 1-ANDRO MAX, in the United States, the State of Wisconsin and this district. Defendant has purposefully and voluntarily placed these products into the stream of commerce with the expectation that they will be purchased in this district.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666

F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## PARTIES

14. Plaintiff Nutrition Distribution, LLC is an Arizona limited liability company.

15. Defendant Suppz is, on information and belief, a Wisconsin corporation.

16. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

17. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States. A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years. The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act and other illegal activity.

### Plaintiff Nutrition Distribution & "Advanced PCT"

18. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

19. Plaintiff has products in several categories of body building products, including pre-workouts, muscle-gainers, fat burners and male performance enhancement.

20. Around 2007, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

21. After devoting its resources for over a year on product development and testing, Plaintiff introduced "Mass FX" in 2008.

### Prohormones & Anabolic-Androgenic Steroids

22. Products containing chemicals described as prohormones are marketed to fitness enthusiasts and bodybuilders as safe and effective muscle-gainers and athletic performance enhancers. Those manufacturing and selling such prohormones often tout the ability of such chemicals to provide many of the same physical benefits of anabolic-androgenic steroids without the dangerous side effects known to be associated with such chemicals.

23. However, it is well established that most chemicals described as prohormones in the fitness marketplace, including 1-DHEA and 1-Androstenediol, metabolize into one or more anabolic-androgenic steroids upon human consumption and therefore have all of the side effects of these resulting anabolic-androgenic steroids. These side effects are in addition to those specifically resulting from the metabolism of the prohormones themselves.

24. Upon human consumption, 1-DHEA metabolizes into, among other chemicals, the prohormone 1-Androstenediol, which in turn further metabolizes into, among other chemicals, the anabolic-androgenic steroid 1-Testosterone.

25. 1-Testosterone has been touted in the bodybuilding and fitness community to increase muscle mass and strength in users. However, these gains come at a steep price. Published, peer-reviewed clinical studies have repeatedly demonstrated that the side effects from oral consumption of 1-Testosterone can include, without limitation, hepatotoxicity (i.e., liver damage), cholestasis (i.e., bile blockage), acute renal failure, hypogonadism (i.e., decreased function or failure of sexual organs), gynecomastia (i.e., development of breasts in men), and infertility. While some of these conditions may be

reversible in cases of short-term consumption, more aggressive use has been shown to result in permanent organ damage. Thus, although even modest consumption of 1-Testosterone poses serious health risks, these risks are often greatly amplified in individuals who, because they are misled as to the side effects of 1-Testosterone and do not benefit from the advice of experts, consume 1-Testosterone for an extended period and/or in significant amounts.

26. It is these severe health risks that led the Federal government in 2005 to classify 1-Testosterone as a Schedule III controlled substance under CSA, thereby criminalizing the manufacture, distribution and dispensation of 1-Testosterone.

27. In an attempt to skirt this classification, unscrupulous manufactures and distributors developed and marketed the prohormone 1-Androstenediol as a delivery mechanism for 1-Testosterone. Oral consumption of 1-Androstenediol, through liver metabolism, results in a varying amount of 1-Testosterone in a user's body. When 1-Androstenediol was placed on Schedule III of the CSA in 2006, manufactures and distributors again attempted to end-run the protections of the CSA by developing and marketing 1-DHEA, which provides an even more attenuated delivery system for 1-Testosterone. Since liver metabolism of orally consumed 1-DHEA results in a varying amount of 1-Androstenediol, among other metabolites, 1-DHEA adds an additional metabolic step to the goal of creating 1-Testosterone in the body.

28. To the extent that 1-DHEA and 1-Androstenediol metabolize in the human body into 1-Testosterone, they pose all of the same extreme health risks attributable to this illegal anabolic-androgenic steroid. In addition, the metabolic processes required to break 1-DHEA into 1-Androstenediol and 1-Androstenediol into 1-Testosterone have been shown to require significant liver resources, thereby significantly increasing the risk of permanent liver damage. This risk is exacerbated by the fact that users often have to take large amounts of 1-DHEA to achieve the desired amount of 1-Testosterone since a large proportion of the 1-DHEA consumed converts to other metabolites or is passed

7

through the body. Accordingly, 1-DHEA is substantially more dangerous than even the dangerous and illegal 1-Testosterone that is the target chemical of 1-DHEA consumption.

29.  These dangers were documented in a 2013 study entitled "Prohormone supplement 3β-hydroxy-5α-androst-1-en-17-one enhances resistance training gains but impairs user health" (*Journal of Applied Physiology* 116: 560–569, 2014) (the "Granados Study"). While the Granados Study did not attach particular harms to specific steps in the body's metabolism of 1-DHEA, it nonetheless concluded that 1-DHEA consumption lead to "marked cardiac, hepatic, renal, and psychological dysfunction." The Granados Study's authors found that while 1-DHEA consumption did result in improved muscle mass and strength in study participants, they concluded that "***the harm associated with [1-DHEA] outweighs any potential benefit***."

30.  In addition, many national and international sports agencies, including without limitation, the World Anti-Doping Agency, the World Natural Body Building Federation and the North American Natural Body Building Federation, have expressly banned 1-Androstenediol and 1-Testosterone from competition. Moreover, because consumption of 1-DHEA will convert when ingested into these Resultant Chemicals, consumption of 1-DHEA will also lead to disqualification from any competition using the World Anti-Doping Agency's standards, another material fact not disclosed by Defendant.

## Defendant Suppz and 1-ANDRO MAX

31.  Defendant is a nutritional supplement company based, on information and belief, in Wisconsin.

32.  On its Website, and through other promotional materials, Defendant touts the numerous health and physical benefits of 1-ANDRO MAX. Defendant specifically markets 1-ANDRO-MAX as a "dietary supplement" to body builders, gym users, fitness enthusiasts and athletes, promising these consumers numerous purported benefits without ever mentioning the potentially severe side effects of this product.

8

33. Despite this marketing, however, Defendant uses its Website to sell, alongside many presumably safe nutritional products, 1-ANDRO MAX. Defendant falsely claims that 1-ANDRO MAX "compared to older prohormones, the negative effects it has on your body are relatively small." In fact, 1-ANDRO MAX is much more dangerous than any other prohormone in history.

34. Defendant's false advertising is harmful to the marketplace for dietary and nutritional supplements, as well as to the health of individual consumers. 1-ANDRO MAX directly competes with Plaintiff's products in the nutritional supplement marketplace as both products are marketed to athletes for muscle mass and athletic performance. Accordingly, Plaintiff has suffered, and continues to suffer, a diminution of its market share directly attributable to Defendant unfairly competing for the same consumers.

## CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

35. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

36. Defendant has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its 1-ANDRO MAX product by, Defendant falsely claims that 1-ANDRO MAX "compared to older prohormones, the negative effects it has on your body are relatively small." In fact, 1-ANDRO MAX is much more dangerous than any other prohormone in history.

37. The use of such false, misleading and disingenuous marketing has the tendency to deceive a substantial segment of the public and consumers, including those in this district, into believing that they are purchasing a product with different characteristics.

38. This deception is material because (i) it is likely to influence a consumer's purchasing decision, especially if the consumer is concerned about the health

consequences of taking anabolic-androgenic steroids or other "controlled substances," and (ii) such decision could lead to dangerous and unanticipated health consequences for such consumers.

39. Defendant has introduced its false and misleading statements into interstate commerce via marketing and advertising on certain websites and shipment of its products into interstate commerce.

40. Because Defendant's 1-ANDRO MAX competes directly with Plaintiff's products, Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendant and the loss of goodwill in Plaintiff's products. Indeed, Defendant's conduct is a black eye on the industry as a whole and has the tendency to disparage Plaintiff's products and goodwill.

41. Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising and promotion, misrepresent the nature, characteristics and qualities of Defendant's products in violation of Section 43(a)(1)(B) of the Lanham Act.

## **PRAYER**

Wherefore, Plaintiff Nutrition Distribution, LLC prays for judgment against Defendant as follows:

1. For preliminary and permanent injunctive relief enjoining Defendant from marketing and selling any product containing any 1-DHEA, 1-Androstenediol or 1-Testosterone, including without limitation, 1-ANDRO MAX;

2. For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;

3. For an award of any and all of Defendant's profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;

4.   For restitution of Defendant's ill-gotten gains;

5.   For treble damages in accordance with 15 U.S.C. § 1117;

6.   For punitive damages;

7.   For costs and attorneys' fees; and

8.   Any other relief the Court may deem appropriate.

Respectfully submitted,

_____
Robert Tauler
Attorneys for Plaintiff
California State Bar No. 241964
TAULER SMITH LLP
626 Wilshire Blvd, Suite 510
Los Angeles, CA 90017
(310) 590-3927

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: May 10, 2017        TAULER SMITH LLP


By: _____
Robert Tauler
NUTRITION DISTRIBUTION, LLC

12